

**FILED**

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

OCT 11 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No. 12-91507-E-7 |
| | ) | |
| DOUG GLENNON JEFFERS and | ) | |
| KELLY JANEEN JEFFERS, | ) | |
| | ) | |
| Debtor(s). | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| AMERICREDIT FINANCIAL | ) | Adv. Pro. No. 12-9024 |
| SERVICES, INC., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUG GLENNON JEFFERS and | ) | |
| KELLY JANEEN JEFFERS, | ) | |
| | ) | |
| Defendant(s). | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION

An Adversary Proceeding was commenced on August 9, 2012, by Americredit Financial Services, Inc., dba GM Financial ("Plaintiff") seeking to have the debts of Doug Glennon Jeffers and Kelly Janeen Jeffers ("Defendant-Debtors") determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), and (a)(2)(C)(i)(I).  The Complaint, Dckt. 1, allegations include

the following:

1.   Jurisdiction for the Adversary Proceeding exists pursuant to 28 U.S.C. §§ 1334, 157, and the reference to this bankruptcy judge by the District Court for the Eastern District of California, and that this is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).   The Defendant-Debtors commenced a voluntary Chapter 7 case on May 23, 2012.

2.   The Plaintiff is a creditor of the Defendant-Debtors, which is in the business of financing the purchase of motor vehicles form retail merchants.

3.   The Defendant-Debtors received their Certificate of Counseling (which is necessary to commence a bankruptcy case, 11 U.S.C. § 109(h)) on March 31, 2011.   A copy is attached as Exhibit A to the Complaint.

4.   On April 19, 2012, the Defendant-Debtors executed a Retail Installment Sale Contract with Heritage Ford, Inc., for the purchase of a 2011 Ford Edge.   The Retail Installment Contract was assigned to Plaintiff in the ordinary course of business.

5.   The Defendant-Debtors did not notify Heritage Ford, Inc. nor the Plaintiff that the Defendant-Debtors were in the process of filing a bankruptcy case.

6.   The Defendant-Debtors commenced their voluntary Chapter 7 case on May 24, 2012, thirty-five days after executing the Retail Installment Contract.

7.   The outstanding balance due on the Retail Installment Contract is $26,155.98.

8.   The First Cause of Action asserts that the obligation owing under the Retail Installment Contract is nondischargeable

1  based on the Defendant-Debtors having obtained the purchase of a
2  vehicle and incurred the debt evidenced by the Retail Installment
3  Contract based on false pretenses, a false representation, or
4  actual fraud, other than a written statement respecting the
5  Defendant-Debtors financial condition – the failure to disclose
6  that the Defendant-Debtors were in the process of filing
7  bankruptcy. 11 U.S.C. § 523(a)(2)(A). The Plaintiff alleges that
8  it relied upon the disclosures of information provided by
9  Defendant-Debtors, and that if it had been disclosed that the
10  Defendant-Debtors were in the process of filing bankruptcy it would
11  not have extended the credit. The Plaintiff alleges that it stands
12  to lose the benefit of the bargain with the Defendant-Debtors if
13  the debt is discharge. Implicit in this allegation is that the
14  "benefit lost" is the right to a deficiency judgment if the
15  Defendant-Debtors subsequently default on the obligation, the
16  Plaintiff has to repossess the vehicle, and because of the
17  depreciation on a late model vehicle, the Plaintiff will suffer the
18  loss of the deficiency created by the depreciation (or possible
19  damage to the vehicle).

20  9.  The Second Cause of Action alleges that the Credit
21  Application provided by the Defendant-Debtors to obtain the credit
22  extended by Plaintiff pursuant to the Retail Installment Contract
23  contained a materially false statement concerning the Defendant-
24  Debtors' financial condition because it did not disclose that they
25  were in the process of filing bankruptcy. Plaintiff alleges that
26  it relied upon the Financial Statement, that such reliance was
27  reasonable as part of the ordinary court of business of automobile
28  financing, that it would not have extended credit if the Credit

3

1  Application had disclosed the Defendant-Debtors were in the process
2  of filing bankruptcy, and will suffer damages as alleged under the
3  First Cause of Action.  11 U.S.C. § 523(a)(2)(B).

4      10.  Exhibit C attached to the Complaint is a copy of the
5  Credit Application.  No specific reference is made (either in the
6  Complaint or Motion for Entry of Default Judgment) to any specific
7  portion of the Credit Application being relevant to this cause of
8  action.

9      11.  The Third Cause of Action asserts that the 2011 Ford Edge
10 is not necessary for the support or maintenance of the Defendant-
11 Debtors or their dependants.  Schedule B filed by the Defendant-
12 Debtors lists ownership of three vehicles.  The debt to Plaintiff
13 for the purchase of the 2011 Ford Edge is in excess of $600.00, was
14 incurred within ninety days of the commencement of the Defendant-
15 Debtors' bankruptcy case, and is therefore presumed to be
16 nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(C)(i)(I).

17     12.  The Complaint alleges that the Retail Installment
18 Contract provides for attorneys' fees, and thereon the Plaintiff
19 requests reasonable attorneys' fees in connection with this
20 Adversary Proceeding.  A copy of the Retail Installment Contract is
21 attached to the Complaint as Exhibit A.  Though the contractual
22 provision is not identified by the Plaintiff (either in the
23 Complaint or Motion for Entry of Default Judgment), the court's
24 review of the Retail Installment Contract identifies Paragraph 3c.
25 which states,

26     3.  IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

27              c.  You may have to pay collection costs.  You will
                 pay our reasonable costs to collect what you owe,
28              including attorney fees, court costs, collection

4

agency fees, and fees paid for other reasonable
collection efforts. You agree to pay a charge not
to exceed $15 if any check you give us is
dishonored.

## **APPROPRIATE ENTRY OF DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55 and Federal Rule of
Bankruptcy Procedure 7055 govern default judgments. *In re McGee*,
359 B.R. 764, 770 (B.A.P. 9th Cir. 2006). Obtaining a default
judgment of nondishcargeability of a claim is a two-step process
which requires: (1) entry of the defendant's default, and (2) entry
of a default judgment. *Id.* at 770.

Even when a party has defaulted and all requirements for a
default judgment are satisfied, a claimant is not entitled to a
default judgment as a matter of right. 10 Moore's Federal Practice
- Civil ¶ 55.31 (Daniel R. Coquillette & Gregory P. Joseph eds. 3rd
ed.). Entry of a default judgment is within the discretion of the
court. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *In re
McGee*, 359 B.R. 764, 770 (B.A.P. 9th Cir. 2006)(citing *In re
Kubick*, 171 B.R. 658, 659-60 (B.A.P. 9th Cir. Alaska 1994).
Default judgments are not favored, as the judicial process prefers
determining cases on their merits whenever reasonably possible. *Id.*
at 1472. Factors which the court may consider in exercising its
discretion include:

```
(1)  the possibility of prejudice to the plaintiff,
(2)  the merits of plaintiff's substantive claim,
(3)  the sufficiency of the complaint,
(4)  the sum of money at stake in the action,
(5)  the possibility of a dispute concerning material facts,
(6)  whether the default was due to excusable neglect, and
(7)  the strong policy underlying the Federal Rules of Civil
     Procedure favoring decisions on the merits.
```

*Eitel v. McCool*, 782 F.2d at 1471-72 (citing 6 Moore's Federal

Practice - Civil ¶ 55-05[s], at 55-24 to 55-26 (Daniel R. Coquillette & Gregory P. Joseph eds. 3rd ed.)); *In re Kubick*, 171 B.R. at 661-662.

In fact, before entering a default judgment the court has an independent duty to determine the sufficiency of Plaintiff's claim. *Id.* at 662. Entry of a default establishes well-pleaded allegations as admitted, *In re McGee*, 359 B.R. at 772, but factual allegations that are unsupported by exhibits are not well-pleaded and cannot support a claim. *Id.* at 774. Thus, a court may refuse to enter default judgment if Plaintiff did not offer evidence in support of the allegations. *See id.* at 775. Finally, Federal Rule of Civil Procedure 9(b), made applicable through Federal Rule of Bankruptcy Procedure 7009, raises the bar by requiring that allegations of fraud be stated with particularity.

In *Kubick*, the Bankruptcy Appellate Panel held that the Bankruptcy Court must exercise its independent duty, arising under Federal Rule of Bankruptcy Procedure 55(b)(2), to determine the sufficiency of the plaintiff's claim before entering a default judgment. *In re Kubick*, 171 B.R. at 662. In *Kubick,* the plaintiff-creditor filed a complaint objecting to Debtor's discharge. *Id.* at 171 B.R. at 659. The debtor did not file a response, and the court granted the plaintiff's motion for default judgment without a hearing. *Id.* On appeal, the Bankruptcy Appellate Panel held that the plaintiff's complaint could not support a default judgment, because it merely recited the statutory elements without sufficiently alleging elements of the claim. *Id.* at 662. In vacating the judgment, the Bankruptcy Appellate Panel held that the Bankruptcy Court must exercise its discretion to

6

determine the legal sufficiency of the complaint before entering a default judgment. *Id.*

Furthermore, in *McGee* the Bankruptcy Appellate Panel affirmed that the Bankruptcy Court may require Plaintiff to present evidence in support of its complaint. *In re McGee*, 359 B.R. at 775. In *McGee*, the creditor filed a complaint to establish its claim as nondischargeable under Federal Rule of Bankruptcy Procedure 532(a)(2)(B). *Id.* at 767. When the defendant-debtor failed to appear, the Bankruptcy Court entered a default. *Id.* at 768. However, the court denied a motion for default judgment, because the creditor did not offer direct proof supporting an essential element of their claim: that they relied on the defendant's fraudulent misrepresentations. *Id.* On appeal, the Bankruptcy Appellate Panel affirmed, holding that merely *pleading* a *prima facie* case, without proving one, does not entitle the creditor to a default judgment. *Id.* at 774. The Bankruptcy Court properly used its discretion in requiring competent, admissible evidence before granting a default judgment. *Id.* at 775.

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

The Motion for Entry of Default Judgment asserts that the Complaint was filed, the Complaint and Summons were served, the Defendant-Debtors have failed to respond, and entry of a default judgment is proper in the amount of $27,836.27. (The court is instructed to read the Declarations of Jim Hogan to see the particular grounds upon which the requested relief is based. Federal Rule of Civil Procedure 7(b) and Federal Rule of Bankruptcy Procedure 7007 require that the motion itself state with particularity the grounds upon which the requested relief is

7

based.)    The prayer for the Motion includes not only the request for a $27,836.27 nondischargeable judgment, but also a judgment for "any additional sum as yet unknown but according to proof" and "for any other relief the Court deems just and proper."  The Motion does not request an award of attorneys' fees.  Dckt. 13.

The Declaration of Jim Hogan is provided in support of the Motion.   Dckt.  14.    Mr. Hogan testifies that his knowledge concerning this debt is based on the books and records of the Plaintiff.   Though Mr. Hogan testifies that the Defendant-Debtors signed and submitted the Credit Application and Retail Installment Contract, this does not appear to be based on any personal knowledge.  Rather, it appears that he is testifying that he is providing copies of these two documents from the books and records of the Plaintiff.

Mr. Hogan testifies that the Credit Application affirmatively represented that a bankruptcy proceeding was not in process. However, Mr. Hogan does not direct the court to any specific provision of the Credit Application, but appears to merely be providing the court with his personal finding of fact based on his reading this document.

With respect to the credit extended, Mr. Hogan testifies that the Plaintiff provided the credit for the purchase of the 2011 Ford Edge.   Though he states the testimony as if he had personal knowledge of the credit being extended, again, his testimony appears to be based only on the books and records of the Plaintiff. He further testifies that the Defendant-Debtors granted a security interest in the vehicle to the Plaintiff, but again, it appears that Mr. Hogan has no personal knowledge of such events.

Mr. Hogan does provide testimony to authenticate the Credit Application, Retail Installment Contract, Vehicle Title Certificate, Plaintiff's claim of ownership of the Retail Installment Contract, and the Plaintiff's computation of the obligation owed on the Retail Installment Contract. Federal Rules of Evidence 901, 803(6). The court accepts his testimony as a custodian of records for the Plaintiff for the exhibits produced and the testimony as to the Plaintiff owning the Retail Installment Contract and the obligation owed thereon.

The court also accepts Mr. Hogan's testimony that if the Credit Application had disclosed that a bankruptcy filing was in process, Plaintiff would not have extended the credit to the Defendant-Debtors.

Mr. Hogan testifies that as of the date of the declaration, $25,576.05 was owed by the Defendant-Debtors. He does not testify that any defaults exist or this entire amount is presently due. He also testifies that Plaintiff has engaged the services of Cooksey, Toolen, Gage, Duffy & Woog, P.C. to prosecute this Adversary Proceeding. He further testifies that Plaintiff has incurred attorneys' fees and costs to this firm in the amount of $2,243.00 in connection with this Adversary Proceeding.

Plaintiff has also filed the Declaration of John Kim in support of the Motion. Dckt. 15. Mr. Kim is a partner in Cooksey, Toolen, Gage, Duffy & Woog, counsel for the Plaintiff in this Adversary Proceeding. Mr. Kim testifies as to his efforts to confirm that the Defendant-Debtors are not active duty members of the military, having obtained entry of defaults for each of the Defendant-Debtors, and how he computes prejudgement interest.

Mr. Kim does not provide testimony authenticating the detailed billing statements for his firm which are being used by Plaintiff in requesting entry of a default judgment that includes attorneys' fees.

Though not directed to the evidence provided in Exhibit C, the Credit Application, the court has reviewed this document to determine if it contains an affirmative misrepresentation as to bankruptcy as concluded by Mr. Hogan. The Exhibit to the Complaint is a very poor copy and rendered almost illegible. The court cannot identify any question on the Credit Application about bankruptcy or any affirmative representation in the Credit Application that the Defendant-Debtors have not, are not, or are not contemplating filing bankruptcy. The court has reviewed both Exhibit C attached to the Complaint, Dckt. 1, and the copy of the Credit Application filed as Exhibit A in support of the Motion for Entry of Default, Dckt. 17. To the extent that such statement is made in the Credit Application, the copies provided the court are so illegible as to prevent the court from being able to make such a finding of fact.

The court has also reviewed the Statement of Intention filed by the Defendant-Debtors in their Chapter 7 case. Bankr. EDC 12-91507, Dckt. 1. With respect to this debt and the 2011 Ford Edge the Debtors state that they intend to retain the vehicle and "pay per contract." The Statement of Intention does not state that the Defendant-Debtors intended to reaffirm this obligation. It appears that what they sought to do was absolve themselves of personal liability for this new vehicle but retain possession by making the monthly installment payments. The effect of not reaffirming this

1 debt would have allowed the Defendant-Debtors to return the 2001
2 Ford Edge at any time they chose to stop paying and put the risk of
3 loss for depreciation and wear and tear on Plaintiff.

**DISCUSSION**

5 The Bankruptcy Code provides that certain types of debt will
6 be nondischargeable either based on the nature of the debt or the
7 conduct of the debtor. At issue before the court is whether the
8 debt owed to Plaintiff is nondischargeable due to fraud. 11 U.S.C.
9 § 523(a)(2) provide that a debt is nondischargeable if it is:

10      (2) for money, property, services, or an extension,
        renewal, or refinancing of credit, to the extent
11      obtained, by--

12            (A) false pretenses, a false representation, or actual
              fraud, other than a statement respecting the debtor's or
13            an insider's financial condition;

14            (B) use of a statement in writing--

15                  (i) that is materially false;
                    (ii) respecting the debtor's or an insider's
16                  financial condition;
                    (iii) on which the creditor to whom the debtor is
17                  liable for such money, property, services, or
                    credit reasonably relied; and
18                  (iv) that the debtor caused to be made or published
                    with intent to deceive; ....

20 For a debtor to be nondischargeable for fraud pursuant to
21 11 U.S.C. § 523(a)(2)(A) there must be showing of actual fraud.
22 *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234
23 F.3d 1081 (9th Cir. 2000), states,

24            Under §523(a)(2)(A) of the Bankruptcy Code, a debt
              for services obtained by the debtor under "false
25            pretenses, a false representation, or actual fraud"
              is nondischargeable.   11 U.S.C. §523(a)(2)(A)
26            (2000). "The purposes of this provision are to
              prevent a debtor from retaining the benefits of
27            property obtained by fraudulent means and to ensure
              that the relief intended for honest debtors does
28            not go to dishonest debtors." 4 Collier on

11

Bankruptcy Par. 523.08[1][a] (15th ed. rev. 2000).

Consistent with these purposes, the Ninth Circuit has consistently held that a creditor must demonstrate five elements to prevail on any claim arising under §523(a)(2)(A). See, e.g., *Britton v. Price* (*In re Britton*), 950 F.2d 602, 604 (9th Cir. 1991). The five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *American Express Travel Related Servs. Co. v. Hashemi* (*In re Hashemi*), 104 F.3d 1122, 1125 (9th Cir. 1997); *Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1086 (9th Cir. 1996).

The court finds that the failure to disclose that the Defendant-Debtors were at least contemplating, and more likely in the process of actually preparing the bankruptcy documents, the filing of a bankruptcy case was a fraudulent omission of highly relevant information.[1]  In failing to disclose that information, the Defendant-Debtors did so with the knowledge that it rendered the balance of their statements in connection with purchasing the vehicle and obtaining the credit deceptive.  They did so intending to deceive the car dealer and ultimately Plaintiff in providing the financing for the Retail Installment Contract.  The Plaintiff justifiably relied upon the omission of this information, and it has been damaged by the loss of any right to a deficiency for this late model vehicle which the Defendant-Debtors intend to retain and

---

[1] The Defendant-Debtors had obtained the required Certificates of Counseling on March 31, 2012, to file a bankruptcy case.  It is highly unlikely that the Defendant-Debtors would incur the expense and spend the time to obtain these certificates if they were not planning on filing a bankruptcy case.

12

1 | use.

2 | With respect to the First Cause of Action, the court finds
3 | that the obligation owed on the Retail Installment Contract is
4 | nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

5 | For the Second Cause of Action, the Plaintiff has not provided
6 | the court with any evidence of a material misrepresentation in the
7 | Credit Application upon which Plaintiff reasonably relied.   The
8 | court cannot identify in the Credit Application provided as an
9 | exhibit the alleged misrepresentation in writing that the
10 | Defendant-Debtors were not in the process of filing bankruptcy.
11 | There must be both a material misrepresentation and a showing that
12 | the creditor relied upon it.  *Boyajian v. New Falls Corporation*,
13 | 564 F.3d 1088, (9th Cir. 2008).

14 | With respect to the Second Cause of Action, the court finds
15 | that the Plaintiff has failed to carry its burden of proof (by a
16 | preponderance of the evidence) to show that the debt is
17 | nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

18 | For the Third Cause of Action, the Plaintiff asserts that the
19 | debt owed on the Retail Installment Contract should be
20 | nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(C) which
21 | provides, in pertinent part, that the following debts are presumed
22 | nondischargeable,

23 | (C) (i) for purposes of subparagraph (A)--

24 | (I) consumer debts owed to a single creditor
25 | and aggregating more than $600 for luxury
    | goods or services incurred by an individual
    | debtor on or within 90 days before the order
26 | for relief under this title are presumed to be
    | nondischargeable; and
27 |
    | (II) cash advances aggregating more than $875
28 | that are extensions of consumer credit under

13

1    an open end credit plan obtained by an
     individual debtor on or within 70 days before
2    the order for relief under this title, are
     presumed to be nondischargeable; and

3
           (ii) for purposes of this subparagraph-
4
     (I) the terms "consumer", "credit", and "open
5    end credit plan" have the same meanings as in
     section 103 of the Truth in Lending Act; and

6
     (II) the term "luxury goods or services" does
7    not include goods or services reasonably
     necessary for the support or maintenance of
8    the debtor or a dependent of the debtor;

9        While the Plaintiff argues that the purchase of a 2011 Ford

10   Focus is a luxury good, it provides little evidence in support

11   thereof. It argues that since the Defendant-Debtors list two other

12   cars on Schedule B, then the 2011 Ford Focus had to be a luxury

13   good.   The Plaintiff does not address (1) that the other two

14   vehicles listed are a 2000 Jeep Cherokee Sport ($3,000.00 value)

15   and a 2002 Saab 95 ($3,000.00 value), (2) the Debtors have an

16   18 year-old son and 22 year-old son listed as dependants, and

17   (3) why the court would conclude that a Ford Focus is a *per se*

18   luxury good.   The Plaintiff's Points and Authorities offers the

19   court no assistance on this Third Cause of Action and is devoid of

20   stating any basis for granting judgment under this Third cause of

21   Action.[2]

22

23        [2] Interestingly, the Points and Authorities also fails to
     contain any authorities for the contention that the debt should be
24   nondischargeable pursuant to 11 U.S.C. § 534(a)(2)(A), instead
     devoting all of the discussion to a contention that the Credit
25   Application contains a written misrepresentation.   Though the Points
     and Authorities, like the Complaint and Declaration, make a general
26   reference to the Credit Application as having a misrepresentation,
     they all fail to direct the court to any specific statement in the
27   Credit Application.   The court could well infer from this failure to
     make such a specific reference that either the attorneys were sloppy
28   in reviewing the credit application (which copy reviewed by counsel
     may have been as nearly illegible as those provided to the court) and

                                14

For the Third Cause of Action, the court finds that the Plaintiff failed to carry its burden of proof (preponderance of the evidence) to establish that a presumption of nondischargeability of this debt arises under 11 U.S.C. § 523(a)(2)(C).

**Request for Monetary Judgment**

The Plaintiff requests that the court enter judgment against the Defendant-Debtors in the amount of $25,576.05. However, the Complaint does not allege that such obligation is now due and owing in full. The Complaint merely alleges that the obligation owing under the Retail Installment Contract was $25,576.05 at the time of the bankruptcy case being filed. No contention is made that the Defendant-Debtors owe all of that money at the present time.

Further, the Plaintiff asserts that it has a security interest in the 2011 Ford Focus. No allegations are made and no evidence presented concerning the status of the vehicle, when the creditor has repossessed the collateral, and what deficiency, if any, remains after the commercially reasonable resale of the collateral.

With only allegations and evidence that an enforceable contract has been entered into which the Defendant-Debtors are liable under and that those obligations should be nondischargeable, the court does not have a basis for granting a monetary judgment to this Plaintiff. No default under the Retail Installment Agreement has been alleged or shown in this Adversary Proceeding. Upon entry of this judgment determining that any and all obligations owing under the Retail Installment Contract are nondischargeable, the

preparing the pleadings, or that counsel was attempting to intentionally misrepresent what is stated in the credit application, intentionally provide the court with a nearly illegible copy, and hope that the court was sloppy in review of this Motion.

Plaintiff will be able to exercise those rights and enforce any monetary obligations thereunder against each of the Defendant-Debtors notwithstanding the entry of the discharge in the bankruptcy case. That does not entitle the Plaintiff to a monetary judgment for the current amount of the obligation which is not alleged to be in default and due in full.

**Request for Attorneys' Fees**

There is no general right to recover attorneys' fees under the Bankruptcy Code. *See In re Kord Enterprises II*, 139 F.3d 684 (9th Cir. 1998) (whether included as part of secured claim); *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439 (9th Cir. 1997) (prevailing party contractual attorneys' fees in nondischargeability action). Under the American Rule, the prevailing party is not entitled to collect reasonable attorneys' fees unless provided for by statute or contract. *Travelers Casualty & Surety of America v. Pacific Gas and Electric Company*, 549 U.S. 443, 448 (2007). (Enforcing contractual attorneys' fees provision for litigating issues arising under bankruptcy law.) Because state law controls an action on a contract, a party is entitled to attorneys' fees to the extent provided for by the contract. *In re Baroff*, 105 F3d. at 411.

California Civil Code authorizes an award of attorney fees "in any action on a contract" where the contract "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . ." Cal. Civ. Code § 1717(a). An action for negligent misrepresentation or for fraud are not actions to enforce the provisions of a contract. *McKenzie v. Kaiser-Aetna*, 55 Cal. App. 3d 84 (1976); *Stout v. Turney*, 22 Cal. 3d 718 (1978).

16

1  However, as stated by the Supreme Court in *In re Travelers*, the
2  contract may provide for attorneys' fees for issues beyond
3  litigating the issues of the contract, such as bankruptcy law
4  issues arising in connection with an objection to claim.

5      The Plaintiff does not direct the court to any specific
6  provision in the Retail Installment Contract upon which it bases a
7  right to contractual attorneys' fees in this Adversary Proceeding.
8  The Complaint does not identify any specific contractual language
9  upon which it seeks recovery of attorneys' fees.   The Complaint
10 merely alleges "Pursuant to the terms of the [Retail Installment
11 Contract], Plaintiff requests its reasonable attorneys' fees in
12 conjunction with Defendants breach of the [Retail Installment
13 Contract]."   The only language the court could identify in the
14 Retail Installment Contract relating to attorneys' fees is in
15 paragraph 3 to the Retail Installment Contract attached as
16 Exhibit B to the Complaint.   Dckt. 1.

17      3.   IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

18              c.   You may have to pay collection costs. You will
                 pay our reasonable costs to collect what you owe,
19              including attorney fees, court costs, collection
                 agency fees, and fees paid for other reasonable
20              collection efforts.   You agree to pay a charge not
                 to exceed $15 if any check you give us is
21              dishonored.

22      The Motion for Entry of Default Judgment does not state with
23 particularity the grounds upon which the request for attorneys'
24 fees is based, nor does it make any reference to attorneys' fees.
25 The declaration of Jim Hogan provides his personal findings and
26 conclusions that paragraph 3(c) provides the contractual basis for
27 Plaintiff recovering attorneys' fees in enforcing obligations.
28 Declaration ¶ 16, Dckt. 14.

17

The Points and Authorities merely states in its conclusions that Plaintiff "[s]eeks a money judgment in the amount of $27,836.27 in its favor to be entered against Defendants, which consists of $25,576.05 in principal balance, $17.22 in prejudgment interest, $2,067.00 in attorneys' fees, and $176.00 in court costs." Dckt. 16.

No attorney from counsel for the Plaintiff has provided testimony as to the fees which were billed in connection with this Adversary Proceeding or authenticated the billing records which Mr. Hogan references in his declaration. While Mr. Hogan can testify as to how much in total fees and costs Plaintiff has incurred to its counsel in connection with this Adversary Proceeding, he has shown no basis for having any personal knowledge of the legal services provided, how they were billed, or how the billing statements offered as evidence are accurate.

In the present case the Plaintiff has established that the obligations owing under the Retail Installment Contract are nondischargeable for fraud based on the failure to disclose that the Defendant-Debtors were contemplating (or in the process of) filing bankruptcy when they obtained the financing from Plaintiff. However, the Complaint does not allege, nor has evidence been presented, that the Defendant-Debtors have defaulted in payments under the Retail Installment Agreement or broke "other promises."

The Complaint does not seek to collect any amounts owing arising from a late, defaulted, or other breached promise, but only seeks to litigate whether the obligations owing under the Retail Installment Contract are nondischargeable. The contract provision for attorneys' fees does not include an Adversary Proceeding in

1  which only a determination of nondischargeability of the debt, but

2  there is no enforcement of the debt itself.[3]

3      It is significant that the Complaint, Motion for Entry of

4  Default Judgment, and Points and Authorities offer little more than

5  a demand for attorneys' fees.  No basis is asserted under the

6  actual language of the contractual provision for awarding

7  attorneys' fees for litigating only the issue of whether the

8  obligations owing under the Retail Installment Contract are

9  nondischargeable.

10     The request for attorneys' fees is denied.

**CONCLUSION**

12     The court grants judgment for the Plaintiff against the

13  Defendant-Debtors, and each of them, that the obligations owing

14  under the Retail installment Contract dated April 19, 2012, for the

15  purchase of a 2011 Ford Focus, VIN ending in 4116, is

16  nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

17     The court grants judgment for the Defendant-Debtors on the

18  Second and Third Causes of Action seeking determinations that the

19  obligations under the Retail Installment Contract were

20  nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(B) and (C), and

---

[3]  The Plaintiff could have included in the contract a provision
for attorneys' fees which provided,

3.  IF YOU PAY LATE, DEFAULT, ~~OR~~ BREAK YOUR OTHER PROMISES,
OR FILE BANKRUPTCY

You may have to pay collection costs.  You will pay our
reasonable costs to collect what you owe, including attorney
fees, court costs, collection agency fees, and fees paid for
other reasonable collection efforts, and any attorneys' fees
and costs in any bankruptcy proceeding.  You agree to pay a
charge not to exceed $15 if any check you give us is
dishonored.

that Plaintiff take nothing by those claims.

The court disallows the Plaintiff any attorneys' fees in this Adversary Proceeding. Because the court has granted judgment on a motion for entry of judgment by the Plaintiff without hearing, the judgment shall grant the Plaintiff fourteen days to file a Motion for allowance of reasonable attorneys' fees and costs if it believes a good faith basis exists for such in this Adversary proceeding.

The court grants judgment for the amount of $176.00 for Plaintiff.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and Federal Rule of Bankruptcy Procedure 7052. The court shall issue a separate order granting the motion and a separate judgment consistent with this Decision.

Dated: October 10, 2012

RONALD H. SARGIS, Judge
United States Bankruptcy Court

20

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Richard Dwyer
800 W El Camino Real #180
Mountain View, CA 94040

Gary Farrar
PO Box 576097
Modesto, CA 95357

Doug Jeffers
3312 TRINA LN
CERES, CA 95307

Kelly Jeffers
3312 TRINA LN
CERES, CA 95307

John Kim
535 Anton Blvd 10th Fl
Costa Mesa, CA 92626-1977

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814